No. 38.—JOSEPH P. GRAY, plaintiff in error, *vs.* JOHN M. COLE, EDWARD H. MANN, defendants, and NOAH MCNABB, trustee, claimant, defendant.

[1.] Not error to refuse to control Counsel under a suggestion that he was misrepresenting the evidence, when he explains that his assertion was only an inference from the evidence, and there were some grounds, though slight, for such an inference.

[2.] Charge to the Jury, unwarranted by the evidence, is error.

[3.] The Jury may consider as evidence rebutting the inference drawn by plaintiff's Counsel, that defendant had sold all his property during the pendency of the suit to claimant, that there was other property of defendant levied on at same time with that claimed and sold.

[4.] Sheriff's return on a *fi. fa.* against defendant not conclusive against a claimant.

Claim, in Decatur County. Tried before Judge ALLEN, April Term, 1856.

John P. Gray caused a *fi. fa.* in his favor, against John M. Cole and Edward H. Mann, to be levied on " eight thousand pounds of seed cotton, more or less, fifty bushels of corn, more or less, and three stacks of fodder," as the property of John M. Cole, one of the defendants in *fi. fa.* Noah Mc-Nabb, as trustee for his wife, Mary A. interposed a claim thereto.

On the trial of this issue, plaintiff in *fi. fa.* introduced the *fi. fa.* with the levy upon the property above specified, and claimed said levy also, including lot of land No. 326, in the 20th district of Decatur, and one hundred thousand brick, more or less. There was a further return indorsed on this *fi. fa.* by the Sheriff, showing a sale of the property levied on, and how the proceeds were appropriated, what amount each particular part sold for; and that the brick, when counted out, numbered seventy-four thousand six hundred and seventy-eight.

ABNER P. BELCHER, the Sheriff who made the levy, testified, that at the time he made the levy, the corn, cotton and fodder were in possession of John M. Cole, one of the defendants, and were at the place where he lived, and which had been cultivated by him during the year 1854; that the door of one of the houses in which the property was found was nailed up; but he did not remember whether it was the house in which the corn or cotton was situated; that when he arrived at the house of defendant, he was not at home; but that he came while witness was there, and claimant was in company with him; he levied on the property, but did not

take it off, for the reason that claimant informed him that he would claim it; that he sold the brick as levied on; (with the exception of a few thousand purchased by plaintiffs in *fi. fa.*;) that he authorized James McCullough to deliver the brick, who returned a few thousand delivered to claimant and others; the purchasers made the return of the remainder, and on their return and representations as to the number of brick, he made the entry and return on the *fi. fa.*; that of his own knowledge, he could not say how many brick there were, as he did not count them, but relied on the statements of plaintiffs in *fi. fa.* as they were truthful and honorable men; that at the trial of this case before the Petit Jury, he could not then make the return, because he had not estimated the number of brick that had been delivered; that he now relies on the statements of McCullough and the plaintiffs in *fi. fa.* as to the number of brick sold and delivered; that he did not remember whether or not he gave instructions to Mc-Cullough to count in the bats two for one on the delivery; that the brick were sold in lots of ten thousand, and brought, on an average, less than five dollars and a-half per thousand; that the plaintiffs in *fi. fa.* allowed, as a credit on the *fi. fa.* six dollars per thousand; they did this, as they said, because this would be all they ever would be likely to get, for that Cole was insolvent; McNabb lived about three miles from Cole, and was his brother-in-law.

The plaintiff in *fi. fa.* here rested.

The claimant then proved by JAMES McCULLOUGH, that the Sheriff authorized him to deliver the brick from the kiln, and he did deliver to McNabb some, and a few thousand to others, and that he made a return of them to the Sheriff; that two bats were counted as one brick, and which he understood to be the rule in delivering brick; that there were a good many bats; that he saw a negro of Mr. Law and Doct. Bruce hauling, and no white person was with them; that some of the brick were broken by running wagons over them, and a great number of bats were left; he cannot say whether more than one thousand or not; the bats are still

there; that some 8 or 10 days before the Sheriff went to make the levy, he was at the house of Cole and saw the claimant and his hands with the hands of Cole that had made the crop, on the place picking out cotton; that he had been sick for some time before, and had not been out, and could not say how long claimant had been thus engaged.

BENJAMIN RUSSELL testified, that he put up two or three of the eyes in the large kiln for Cole, and if the kiln was completed with 7 or 8 eyes, then, according to his estimation, the kiln would have contained 70 or 80 thousand brick; but he does not know whether the kiln was completed or not; he bought of Cole the small kiln, estimated at 50 thousand brick, and if it did not hold out, the deficiency was to be supplied from the large kiln; that he hardly thought it would have turned out 50 thousand brick; that this kiln was levied on, and he and Cole canceled the trade; that he built for Cole a small chimney, and out of the casing and outside brick; that he is a brickmason, and understands estimating brick-kilns; that he thought Cole's estimate too high; that in all kilns there are a great many bats and salmon bricks.

P. BEDFORD testified, that he finished putting up the large kiln, and on the plan in which it had been commenced, and that it contained 8 eyes; and from his count and calculation of Cole, on his estimate, there were 80 thousand in it; it was 22 bricks high; that he could not make the calculation himself.

MOULTRIE MAXWELL testified, that he heard a trade between McNabb and Cole in the early part of the fall of 1854, in which McNabb purchased of Cole all of his crop of corn, and fodder, and cotton, and stock of hogs, and cows, and his mules and wagon; that McNabb paid for them in a note on Cole for several hundred dollars, but he could not remember the amount; that by the terms of the purchase, McNabb was to have immediate possession; there was but a small number of stock of cattle; Cole had no negroes of his own; the negroes he worked that year were hired; don't recollect the exact time of the trade.

Gray *vs.* Cole *et al.*

The claimant here closed.

. In rebuttal, plaintiff in *fi. fa.* introduced two *fi. fas.*: one in favor of Jesse Harper, against same defendants, the other in favor of James English against John M. Cole, obtained at the same term of the Court, and same entries upon them as the first named *fi. fa.*; also, the minutes of the Court, which showed that the October Term of the Superior Court for 1854, commenced on the 21st day of the month. (Judgments were obtained at that term upon which the *fi. fas.* were founded.)

The cause being submitted to the Jury, a verdict was rendered, finding the property subject.

Whereupon, claimant's Counsel moved a rule for a new trial, on the following grounds, to-wit:

1st. Because the Jury found contrary to evidence.

2d. Because the Jury found contrary to law.

3d. Because the Jury found contrary to law and evidence.

4th. That the Counsel for plaintiff, in concluding the argument, stated that the evidence was, that the defendant had sold the whole of his property to the claimant pending the suit, and which was a badge of fraud; and Counsel for claimant objected and called upon the Court to restrain the concluding Counsel in this statement. The Court stopped the concluding Counsel, who then stated that it was in evidence that the defendant in *fi. fa.* pending the suit or just about or after the judgment, had sold all his corn, fodder, cotton crop, stock of cows, hogs, mules and wagon; and that he had no negroes; and inasmuch as he had sold the means by which he lived, he was authorized to conclude that he had sold the whole of his property—of which the Jury would judge—that Counsel had not shown that defendant had any other property. The Court decided that it was not competent for the Court to say what had been proven, and that he would leave it to the Jury to determine—the Counsel still contending that the evidence showed the sale of all the property of defendant to the claimant—to which Counsel did not object, after the ruling of the Court as above.

Gray *vs.* Cole *et al.*

6th. That the Court erred in charging the Jury, that if a debtor sold his property to a creditor *bona fide* and for a valuable consideration, in payment of his debts, the property was not subject; but if he sold to the debtor a large surplus of property, over and above the payment of the debt, then, it would be fraudulent against creditors, and subject to the debts of the debtor.

7th. That the Court erred in refusing, at request of claimant's Counsel, to charge that the levy and sale by the Sheriff of No. 326, in 20th district, and the brick, as appeared by the return of the Sheriff on the several *fi. fas.* before the Jury would be proper to be considered by them as evidence against the statement of concluding Counsel for plaintiff, that the defendant sold the whole of his property pending suit, and this was a badge of fraud. This request was after the general charge was concluded, and the Court directed the Jury to consider the *bona fides* of the case, and all the facts as proven.

8th. That the Court erred in charging the Jury, that the return of the Sheriff, as to the number of brick and amount of sale, was conclusive.

The Court refused the motion on all the grounds, and claimant excepted.

WARREN & WARREN, for plaintiff in error.

LAW & SIMS, *contra.*

*By the Court.*—McDONALD, J. delivering the opinion.

The first three grounds taken in the motion before the Court below for a new trial, have been abandoned.

[1.] When the plaintiff's Counsel was stopped by the Court, on the motion of claimant's Counsel, for misrepresenting the evidence, by asserting that the defendant had sold to claimant the whole of his property during the pendency of the suit on which plaintiff's judgment was obtained, and he

Gray *vs.* Cole *et al.*

explained by saying it was his inference, only from the evi-. dence, there was no error in the refusal of the Court, after this explanation, to control him.    There was some proof on which such an argument might be predicated, though slight, certainly, taking the whole evidence together.    The Jury could not have been misled after the explanation.

[2.] The Court erred in charging the Jury, that if the debtor sold to his creditor property, in payment of his debt, and a large surplus over and above the payment of it, it would be fraudulent against the creditor, there having been no evidence made to warrant such a charge.

[3.] The property claimed was levied on by the Sheriff, at the same time that a tract of land and a parcel of bricks, which were sold, were levied on.    The plaintiff's Counsel argued, as an inference from the testimony, that the defendant had sold the whole of his property pending the suit; and claimant's Counsel requested the Court to charge the Jury, that the levy and sale of the land and bricks was proper evidence to be considered by them, against that inference.    This evidence was certainly a clear reply to that inference; and the charge, as requested, ought to have been given; and the refusal to give it was error.

[4.] Under no rule of evidence that occurs to us, was the return of the Sheriff on the writ of *fi. fa.* showing the sale of the bricks, conclusive on the claimant.    It would not have been conclusive on the plaintiff, for under the Judiciary Act of 1799 the plaintiff might have proceeded by attachment against the Sheriff, if he had been injured by a false return. By a later Act, he may traverse the Sheriff's return in certain cases.    This case is an illustration of the propriety and good sense of the rule which allows the inquiry; for the Sheriff's own evidence impeaches the return, and shows that he intrusted to one of the parties an important duty, which he alone ought to have executed.

The judgment of the Court is reversed, and a new trial ordered.