DARSEY *v.* THE STATE.

This case came before the Supreme Court upon a writ of error; and the same being for decision by a full bench of six Justices, who are evenly divided in opinion (Justices Lumpkin, Beck, and Atkinson being in favor of a reversal, and Chief Justice Fish, Presiding Justice Evans, and Justice Holden being in favor of an affirmance), the judgment of the court below stands affirmed by operation of law.

MAY 10, 1911.   REHEARING DENIED JUNE 23, 1911.

Indictment for murder. Before Judge Martin. Laurens superior court. February 7, 1911.

The bill of exceptions recited as follows: "Thereupon [i. e. after the close of the evidence] his honor, J. H. Martin, judge presiding, delivered his charge to said jury, and concluded said charge by instructing the jury that if they found said defendant guilty of murder and did not wish to recommend him to life imprisonment, their verdict should be 'We, the jury, find the defendant guilty.' That if they found said defendant guilty of murder and wished to recommend him to life imprisonment, the form of their verdict should be 'We, the jury, find the defendant guilty, and recommend him to the mercy of the court.' That if they found said defendant guilty of voluntary manslaughter the form of their verdict should be, 'We, the jury, find the defendant guilty of voluntary manslaughter.' That if they found said defendant not guilty the form of their verdict should be 'We, the jury, find the defendant not guilty.' Thereupon the jury retired to their room, and, after deliberating upon said case for some time, they returned into court and announced to said judge that they had agreed upon a verdict, and said judge directed the clerk of said court to receive the bill of indictment and read the verdict. The clerk received the bill of indictment from the jury and read the verdict written upon said bill of indictment, which was as follows, to wit: 'We, the jury, find the defendant guilty of involuntary manslaughter. February 3, 1911. J. H. Holcomb, Foreman.' Whereupon said judge of said court returned the bill of indictment to said jury who still remained empanelled and in the jury-box where they were seated when the bill of indictment was handed the clerk, having never separated or left the jury-box, with the following statement, to wit: 'I can not receive that verdict,' which was made as soon as verdict was read. Thereupon defendant's counsel in open court made the following oral objections to wit: 'We interpose an objection on the ground that the verdict had been rendered by the jury, received by the clerk, and published in open court after the court had asked the jury had they agreed on a verdict and the foreman stating that they had. We object to the jury further considering the case and to the court refusing the verdict tendered, on the grounds mentioned.' Thereupon the judge instructed the jury as follows, to wit: 'Gentlemen, I shall return that [referring to the indictment] to you, and you go back and enter upon your deliberations again. I can not receive that verdict. No such

charge was given you by the court in regard to a verdict. The court did not charge you anywhere involuntary manslaughter as a form of verdict. The court charged you the different forms of verdict that you could find in this case; that if you find it for murder that you say, "We, the jury, find the defendant guilty," and that would mean the death penalty, or if you find the defendant guilty of murder and recommend him to mercy, that would mean that he be punished by imprisonment in the penitentiary for life. I further charged you that if you found him guilty of voluntary manslaughter, the form of your verdict would be, "We, the jury, find the defendant guilty of voluntary manslaughter." If you find the defendant not guilty, then the form of your verdict would be, "We, the jury, find the defendant not guilty." I nowhere charged you anything about involuntary manslaughter. You may retire and find a verdict.' The court further instructed the jury to strike from the indictment the verdict for involuntary manslaughter written thereon, stating that it was not in proper and legal form. The said jury returned to their room and further deliberated upon said case, and so continued to deliberate until the following morning, at which time said judge called said jury into court and inquired whether or not they had agreed or were likely to agree upon a verdict, and said jury informed the court that they had not agreed and could not agree upon a verdict in said case. Thereupon counsel for the defendant, anticipating that the court was going to declare a mistrial, submitted the following oral objection, to wit: 'I suppose your honor is going to declare a mistrial. I make the point that the jury has already found the defendant guilty of involuntary manslaughter, and the verdict of the jury has been published, and afterwards the court instructed the jury to go to the jury room and make a verdict. We now come in behalf of the prisoner at the bar and object to the court declaring a mistrial and withdrawing the case from the jury, on the ground that the jury in this case has already found a legal verdict, to wit: "We, the jury, find the defendant guilty of involuntary manslaughter." The defendant contends that this is a legal verdict and has been so construed by the Supreme Court of Georgia, and it means the highest grade of involuntary manslaughter. The defendant also contends that there is evidence submitted by the State that the prisoner, just immediately after the shooting, said to two or three of the State's witnesses that he

killed him in fun, meaning that there was no intention to kill; and where there is any doubt about the intention to kill, the judge should always give in charge to the jury the law on involuntary manslaughter. For these reasons the defendant contends that the verdict of the jury was correct in law, and the evidence authorized it, and it was error for the court to send the jury back to their room, and the defendant now objects to the court declaring a mistrial and insists that a verdict has already been found and published against him which was legal. That is all the point I want to make.' Whereupon said judge of said court declared a mistrial."

When the case was again called for trial, the accused filed a plea of former conviction and former jeopardy. The issue was submitted to the presiding judge, on an agreed statement of facts. He decided the issue in favor of the State. The defendant excepted.

*John R. Cooper* and *Howard & Hightower,* for plaintiff in error.

*H. A. Hall, attorney-general,* and *E. D. Graham, solicitor-general,* contra.

PER CURIAM. Justices Lumpkin, Beck, and Atkinson are of the following opinion on this point: In this State, it is the duty of the judge to charge the law in a criminal case, and the duty of the jury to accept the law given them in charge as correct. Nevertheless, the jury have it in their power to find a verdict of not guilty, and the judge can not properly refuse to receive it because it may not accord with his charge or the evidence. Under an indictment for murder, a finding of guilty of a lesser grade of homicide is an implied acquittal of murder. Whether or not the jury ought to have found this, under the evidence and the law applicable thereto, the judge can no more refuse to allow a partial acquittal than he can refuse to allow a total acquittal. This is entirely different from a case where the verdict is informal, or does not express the finding of the jury clearly, or is for an offense not covered by the indictment. The judge having, over objection of defendant's counsel, refused to receive a verdict of guilty of involuntary manslaughter because the law of that grade of homicide was not given to the jury in his charge, having required them to return to their room to further deliberate and find a verdict, and, after they could not agree on another verdict, having, over objection, declared a mistrial, when the case was again called for trial a plea of former jeopardy was a good plea in bar. A verdict of guilty of

involuntary manslaughter was a verdict of the higher grade of involuntary manslaughter. *Thomas* v. *State*, 121 *Ga.* 331 (49 S. E. 273).

Chief Justice Fish, Presiding Justice Evans, and Justice Holden are of the opinion that the facts relied on to support the plea of former jeopardy are insufficient as a bar to the further prosecution of the case. They are of the opinion that on a trial for murder, where neither the evidence nor the charge of the court authorizes a verdict of involuntary manslaughter, the judge may refuse to accept a finding of the jury that the defendant is guilty of that grade of homicide, and if the jury subsequently are unable to agree upon a verdict of guilty of another grade of homicide authorized by the law and the evidence, or of not guilty, a mistrial may be legally declared.