POWELL, *alias* KILGORE, *et al. v.* THE STATE.

402

No. 9838.   SEPTEMBER 15, 1934.

*E. S. & J. L. Griffith, D. B. Howe,* and *Walter Matthews,* for plaintiffs in error.

*S. W. Ragsdale, solicitor-general, M. J. Head,* and *A. I. Head,* contra.

RUSSELL, C. J. (After stating the foregoing facts). We shall deal first with the special grounds of the motion for new trial.

Error is assigned on the admission of testimony offered in

support of the general character of the prosecutrix, Ruby Moncrief, for chastity. The objection was stated as follows: "We object to that evidence and move to rule it out. We have not attacked her character. We insist there is only two ways that the character of a witness can be sustained. One is when the defendant has attacked the character of the witness for general bad character, and the other is when it is sought to be shown by the defendant that the witness has made contradictory statements out of court." It will be seen from the form of the objection that the right of the State to introduce evidence as to the general character of a witness for chastity in certain instances is conceded. The objection to the evidence offered in this case was based on the statement, "We have not attacked her character." The objection was wholly without merit, and the court did not err in refusing to exclude the testimony. As appears from the record, the evidence was offered after the defendants had all made statements. One of them, Shug Goodwin, stated that he had had intercourse with the prosecutrix as far back as 1930. Without referring to the statements of the other two defendants, the evidence was certainly admissible against the statement of Shug Goodwin.

■ The testimony of the witness Hicks, that he "was called to the front porch, facing that direction; my wife heard some woman scream," was objected to only as follows: "I object to what his wife said." This objection was overruled, the court stating that the witness could give said testimony to show his reason for going to the place where the offense was alleged to have been committed. It is not necessary to hold that the court did not err in this statement. The objection was properly overruled, because no reason why the testimony should be repelled was presented by the mere statement "I object to what his wife said." It does not appear what the witness's wife said, or that she said anything, or why what she said was for any reason inadmissible on legal grounds.

■ Objection was made to the testimony of a justice of the peace, who swore that he issued warrants for the defendants on the night of the alleged offense, the objection being that the warrants would be the best evidence. While the warrants would be the best evidence of the contents of the papers, the testimony was competent and admissible in corroboration of the testimony of the prosecutrix that she promptly complained of the offense "that night," the night of the alleged offense of rape.

It is assigned as error that the court erred in not declaring a mistrial, although a motion for a mistrial was duly made, and failed to rebuke the State's counsel in his argument to the jury, or to instruct the jury to disregard the argument. The language used by counsel associated with the solicitor-general was, "Gentlemen, if you turn these defendants loose, no woman will be safe." The court overruled the motion for mistrial, but asked counsel to "refrain from the manner of argument that counsel objected to as being improper." Plaintiffs in error contend that the court erred: (a) By overruling the motion for a mistrial on account of said argument. (b) By failing to rebuke or reprimand counsel for making said argument. (c) By failing to instruct the jury to disregard said argument, either at the time said argument was made, or in the charge to the jury, or at any other time during the trial. To use the words of this court in *Patterson* v. *State*, 124 *Ga.* 408 (52 S. E. 534): "Flights of oratory and false logic do not call for mistrials or rebuke. It is the introduction of facts not in evidence that requires the application of such remedies." See *Pelham & Havana R. Co.* v. *Elliott*, 11 *Ga. App.* 621 (75 S. E. 1062), and cit. In *Manchester* v. *State*, 171 *Ga.* 121 (155 S. E. 11), it was held: "The matter of ordering a mistrial for improper argument of counsel is very important, and should be liberally exercised in all cases where counsel abuse their privilege of argument by prejudicing the case of the opposite party. . . However, it is a matter largely within the discretion of the court; and unless it is apparent that a mistrial was essential to preservation of the right of fair trial, the discretion will not be interfered with." In *Taylor* v. *State*, 121 *Ga.* 348, 354 (49 S. E. 303), Mr. Justice Evans said: "It is quite natural, and by no means unusual, for an advocate, in discussing the facts of a case before a jury, to indulge to some extent in imagery and illustration. Sometimes a simile may be inapt, or the metaphor mixed, or the expression may be hyperbolical. What the law forbids is the introduction into a case, by way of argument, of facts not in the record and calculated to prejudice the accused. The language of the solicitor was somewhat extravagant; but figurative speech has always been regarded as a legitimate weapon in forensic warfare, if there be evidence before the jury on which it may be founded." In the expression, "if you turn these defendants loose, no woman will be safe," the attorney was not at-

tempting to add to or subtract from the evidence in the case. The facts in *Patterson* v. *State,* supra, were very similar to those involving the same point in the case at bar. In *Patterson's* case error was assigned upon the failure of the court to declare a mistrial because the solicitor-general in his argument used the following language: "The blood of this dead man calls upon you to punish this man and protect his family and relatives; and unless you have the manhood to write it in your verdict, you should be exiled from the good county of Heard." As to this the court held: "We do not think this language called for a mistrial, or a rebuke from the judge. It introduced no fact, but was merely a forcible and possibly an extravagant method adopted by counsel of impressing upon the jury the magnitude of the offense and the solemnity of their duty in relation thereto." See also *Haden* v. *State,* 176 *Ga.* 304, 313 (168 S. E. 272). An examination of the record in that case will show that the language employed by the solicitor-general was in some respects more impressive, if not more inflammatory, than the language of which complaint is made in this case; but the court held that the grant of a mistrial, on motion, was not required, because it did not introduce facts that were not in evidence.

■ Error is assigned upon the charge of the court on the subject of conspiracy, because there was no basis in the evidence, or in the statements of the defendants, or in the facts and circumstances, to authorize said charge; that there was no conspiracy in the case; and that the charge was an expression or intimation by the court that conspiracy was involved in the case. The criticism that the instruction was an expression or intimation by the court that conspiracy was involved is without merit, and we deem that the circumstances of the case as detailed by the testimony in behalf of the prosecution, if credited by the jury, were sufficient to authorize them to infer that there was an implicit agreement between the defendants with Mildred Merritt, who was not introduced as a witness, that the prosecutrix should be compelled to have sexual intercourse with any one, or as many, of the defendants as might desire to have carnal intercourse with her, without her consent, by force, and against her will. We can not hold that in these circumstances the court erred in charging on the subject of conspiracy as set forth in the instructions of which complaint is made. We reach this con-

clusion the more readily because it is apparent from the record that the instruction could not have injured the defendants, in view of the fact that there was evidence to authorize the jury to convict even if no conspiracy was shown.

■ The charge to which exception is taken in the sixth ground of the motion for new trial, and which is set out in the statement of facts above, is not subject to the criticisms directed against it, when it is construed in connection with the charge as a whole. The assignment that the expression, "if she was carried there by all for that purpose," was error, because there was no evidence on which to base it, "it being uncontradicted and undisputed that one of the defendants did. not go there to this place with the others," is not supported by a review of the evidence. It was in the evidence that Blake Powell, alias Blake Kilgore, one of the defendants, did not come to the scene of action until Tack Laminack went after him; but there was also evidence that the car belonged to Powell, alias Kilgore, and that he intended to go with the first contingent, and probably waited to get the whisky which he brought to the scene upon his arrival. If the jury believed the testimony of the prosecutrix, she did not know that he intended to participate in the ride; he had not intended to go, and she positively denied the unsworn statements of all the defendants that she sent for Powell, or that she knew that Tack Laminack was going for the purpose of bringing him into the action. Complaint is made that the court did not define the terms "implied agreement" or "express agreement," and what it would take to constitute such an agreement, etc. When read with the context, the words "implied agreement" and "express agreement" are of such obvious meaning as to be readily understood by any jury of ordinary intelligence; and certainly it would have required a proper written request to invoke a definition of these words, for it must be remembered that the only denial of the testimony of the prosecutrix came from the unsworn statements of the defendants. The rule is invariable, that the court is not required to charge the jury in a criminal case upon a principle of law dependent entirely on the statement of the accused, unless there be an appropriate timely request for such instruction as may be desired.

It is contended that the charge in reference to the testimony of witnesses as to the good character of the prosecutrix for chastity

(ground 7) was error, in that it was an instruction that the statements made by the defendants tending to show that the prosecutrix was a lewd, unchaste woman, tended to discredit her character, whereas movants contend that any such statements not only tended to discredit the prosecutrix, but also could be considered by the jury for the purpose of determining whether or not she consented to the sexual intercourse, if such was shown. As to this exception, it must be remembered that the statements charging unchastity or lewdness against the prosecutrix came only from the defendants themselves, and the evidence introduced on behalf of the State did not raise any question as to whether she consented to the sexual intercourse. The evidence as to character in this case tended to rebut any idea that she would have consented to the sexual intercourse. And so, even if there were error in the instruction, it is not one of which the defendants can complain. It is further contended that the court failed to charge the jury that if the statements made by the defendants tended to show the alleged assaulted female to be a lewd, unchaste woman, the jury should consider, and it was their duty to consider, the same as a circumstance, not only throwing light upon the credibility of the witness, but that it should be also considered as a circumstance as to whether or not the female alleged to have been assaulted consented to the act of sexual intercourse. This assignment of error is without merit, in view of the ruling just preceding.

■ In ground 9 error is assigned on the charge set out in ground 7, but for a different reason. It is contended that the instruction was restricted in its application; that it was not full enough; that taken alone it is not the law that should be applied; that the evidence of good character offered by the State was held out in this charge as tending to support the good character and credibility of the witness; that the court in this connection failed to instruct the jury that it was a question for them to determine whether or not the witness had by this testimony been sustained; that the court failed to instruct the jury as to the weight and credibility of the sustaining evidence of good character, or to lay down the rule by which the jury might measure and apply the same. Movants contend that as the court undertook to charge the jury on the subject of sustaining character evidence, the court should likewise have charged the jury fully upon this subject, and that it was, after all,

a matter for them to determine whether or not the witness had been sustained. The allegation that "the court, in this connection, failed to instruct the jury that it was a question for the jury to determine whether or not the witness had by this testimony been sustained," and that "the court failed to instruct the jury as to the weight and credibility of the sustaining evidence of good character, or laid [lay] down the rule by which the jury might measure and apply the same," is too vague and indefinite to present to the superior court for review, or to this court, the specific point on which the court failed to instruct the jury. It was not necessary to tell the jury that it was a question for them to determine whether or not the witness had by this testimony been sustained, because the court more than once in the charge instructed the jury that all issues of fact were wholly within their jurisdiction and were to be determined by them. The court should not have instructed the jury as to the weight and credibility of the sustaining evidence of good character, for it was a matter entirely for the jury "as to the weight and credibility" of *all* the evidence in the case; though it is true, as a general rule, that whenever the court undertakes to charge a jury upon any proposition of law, the charge of the court upon the subject should be full and complete. An exception to a charge must always be sufficiently definite to apprise the court of the precise nature of the specific point to which the alleged error refers.

■ The assignment of error contained in the tenth ground is that the excerpt from the charge of the court therein referred to is not a correct statement of the law upon the subject dealt with. The complaint is that the instruction was given by the court just following the charge on the question of conspiracy, and that the charge "intermingled and confused the charges on conspiracy and that of principals in the first and second degrees." We wholly disagree with this contention. It is also insisted that the charge was error because the court failed to explain to the jury the rules that would govern them in determining whether or not one or more of the defendants were guilty of being a principal in the first and second degree, and thus left the jury without instruction how to apply this principle to the facts in this case, and without instruction as to how to proceed in the trial of the case if they found that some of the defendants were principals in the first and some principals in the second degree. After consideration of the charge of

416

the court as a whole, and a careful review of the entire evidence, and in view of the fact that the measure of guilt in this case is the same for principals in the first and second degrees, this court is unable to conceive how the charge or the omission to charge pointed out in this assignment of error could have worked the slightest injury to the accused.

■ The salient points in the evidence are set forth above. We do not deem it necessary to recapitulate the testimony. The testimony of the prosecutrix, if believed by the jury, tended to establish the fact that all three of the defendants, either as conspirators or as active participants (whether they or any of them participated as principals in the first degree or as principals in the second degree is immaterial), compelled the prosecutrix violently and forcibly, without her consent and against her will, to allow two of the participants to have sexual intercourse with her. And if corroboration be necessary, it is ample in this case to authorize the verdict. Whether the girl, in making the complaint to her mother, did so at the first proper opportunity or not, was a question to be determined by the jury. Whether the signs of the intercourse and the evidence of force were corroborated was also a question for the jury. The torn sleeve which the girl said was wrenched from her coat in her resistance and the torn pants which were jerked off her body in the encounter were before the jury. A witness testified that at a time which could not have been later than two hours from the assault she came in company with her mother, and at their request he procured a warrant for the arrest of the accused. By numerous witnesses she was proved to have sustained for several years an unbroken record for chastity, and the testimony of the doctor who examined her privates was that, while he could not say whether or not she gave consent to the intercourse, her hymen had been only recently ruptured, indicating her previous chastity; thus if believed, absolutely demolishing the testimony of one of the defendants, who, in rebuttal of the testimony of the prosecutrix that she had never had intercourse with any man before the occurrence under consideration, stated that in 1930 he had intercourse with her. Numerous marks and bruises were upon her person, and these were explained by the defendants as having resulted from a stiff fight with Mildred Merritt; but the jury were authorized to consider whether the wounds seen on the inside of her thighs, and treated by

her mother, could have been received in the hair-pulling, scratching, slapping contest described by the defendants in their statement. The testimony of the girl that she drank no whisky was corroborated by several witnesses; and her statement that some of the accused poured whisky on top of her head when she refused to drink was corroborated by two witnesses, who testified that they made an examination, and there was no smell of whisky on her mouth, but that the odor of whisky was still in her hair. So we are of the opinion that the jury were authorized to believe that the testimony of the prosecutrix was fully corroborated, and that the evidence supported the verdict. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur, except*
ATKINSON, J., who dissents from the ruling in the sixth division of the opinion.